NOT FOR PUBLICATION                    [Dkt. No. 16, 17]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| D.S. & B.S., individually and on behalf of M.S., | |
| Plaintiffs/Counterclaim-Defendants, | Civil No. 16-131 (RMB/JS) |
| v. | **OPINION** |
| VOORHEES TOWNSHIP BOARD OF EDUCATION, | |
| Defendant/Counterclaim-Plaintiff. | |

APPEARANCES:

**Catherine Merino Reisman**
Reisman Carolla Gran LLP
19 Chestnut St.
Haddonfield, N.J. 08033-1810
     *Attorney for Plaintiffs/*
     *Counterclaim-Defendants*

**Howard S. Mendelson**
Davis & Mendelson, L.L.C.
20 E. Clementon Rd.
Suite 205-N
Gibbsboro, N.J. 08026
     *Attorney for Defendant/*
     *Counterclaim-Plaintiff*

**BUMB**, United States District Judge:

THIS MATTER comes before the Court upon motions for summary judgment filed by both parties in this case, Plaintiffs/Counterclaim-Defendants D.S. and B.S., individually and on behalf of their son M.S. ("Plaintiffs"), and

Defendant/Counterclaim-Plaintiff Voorhees Township Board of Education ("Defendant School Board").  (Mot. Summ. J. [Dkt. No. 16] (Defendant School Board's motion); Mot. Summ. J. [Dkt. No. 17] (Plaintiffs' motion)).  The action is one for attorney fees under the Individuals with Disabilities Education Act ("IDEA"), among other grounds.[1]  As set forth below, the Court GRANTS Plaintiffs' motion for summary judgment on their claim for attorney fees, but only insofar as the Court determines Plaintiffs are the "prevailing party" with regard to achieving stay put rights on the 504 Plan.  The Court RESERVES on the issue of the amount of the attorney fees to be awarded.  The Court DENIES Defendant School Board's motion for summary judgment insofar as it relates to dismissal of the Complaint, but GRANTS the motion with regard to any other relief upon which Plaintiffs seek to be a prevailing party other than the stay put rights discussed below.  The Court additionally GRANTS Plaintiffs' motion for judgment on the pleadings (improperly styled a motion for summary judgment) on Defendant School Board's counterclaim for its own attorney fees.

## I.   <u>FACTUAL BACKGROUND</u>

Plaintiffs filed a Petition for Due Process in July 2014 challenging the Defendant School District's proposed

---

[1] The parties' arguments deal only with fees pursuant to IDEA.

declassification of M.S. as special needs and proposal to
provide him with a speech-only Individualized Education Program
("IEP").  (Def.'s 56.1 St. & Pls.' Resps. ¶ 1 ("Def.'s St. &
Pls.' Resps.") [Dkt. Nos. 16, 20-1]).  Specifically, Plaintiffs
argued that Defendant School Board's proposed declassification
would impede M.S.'s rights under IDEA.  (Id.; see also Def.'s
56.1 St. Ex. A ("First Due Process Petition")).  The relief
requested by Plaintiffs in the First Due Process Petition was:

- Maintenance of M.S.'s eligibility for special education;
- A finding that the School District's proposed June 19, 2014
  Speech-only IEP did not offer a Free Appropriate Public
  Education ("FAPE");
- An order that the Defendant School Board's proposed speech-
  only IEP be amended to address all of M.S.'s needs related
  to his disability (to keep M.S. classified and have him
  receive an IEP addressing issues other than speech); and
- Attorney fees and costs of suit, including expert witness
  fees.

(Def.'s St. & Pls.' Resps. ¶ 2).

A settlement agreement was reached between the parties on
November 21, 2014.  (Id. at ¶ 3; Def.'s 56.1 St. Ex. B ("2014
Settlement")).  The 2014 Settlement dictated that M.S.'s
educational needs would be independently evaluated by Rowan
University and "the parties shall utilize said (independent)
evaluation to hopefully reach agreement concerning M.S.'s
eligibility or ineligibility for special education services."
(Def.'s St. & Pls.' Resps. ¶ 3).  The 2014 Settlement also

3

provided that the parties shall be responsible for the payment of their own attorney fees, and indicated that neither party will be considered a "prevailing party" for any purpose.  (Id. ¶ 3).

Consistent with the 2014 Settlement, an independent evaluation was carried out by Rowan University.  (Id. at ¶ 4; Def.'s 56.1 St. Ex. C ("Independent Evaluation")).  Defendant School Board and Plaintiffs disagree whether the Independent Evaluation established that M.S. should be declassified as special needs.  (Id. at ¶ 4.)  The Individual Evaluation itself does not make any recommendation regarding whether M.S. should be declassified, but does note that "the present findings are very encouraging in terms of [M.S.]'s many cognitive strengths and positive adjustments to his present kindergarten program" and "the school-based occupational and speech and language therapies are resulting in improvement of skills and should be continued with reinforcement at home."  (Independent Evaluation at Recommendations ¶¶ 1, 6).

In July 2015, Defendant School Board offered a speech-only IEP and occupational therapy services under a 504 Plan, but Plaintiffs did not agree to this resolution and filed a second due process petition challenging his declassification.  (Def.'s 56.1 St. Ex. D ("Second Due Process Petition")).  Plaintiffs' Second Due Process Petition sought the following relief:

- A finding that, pending resolution of the dispute, Defendant School Board must provide stay put programming based upon the last agreed-upon IEP;

- Declaring that Defendant School Board's actions in refusing to implement M.S.'s stay put programming violate IDEA;

- A finding that the July 2015 offer of a speech-only IEP was not a FAPE;

- Attorney-fee reimbursement; and

- Miscellaneous other relief.

(Def.'s St. & Pls.' Resps. ¶ 6).  D.S. states in a declaration in support of Plaintiffs' motion for summary judgment that Plaintiffs filed the Second Due Process Petition seeking "reinstatement of M.S.'[s] stay put speech programming at a private provider, Rizza Miro Associates, because [Defendant School Board] had unilaterally terminated those services in July, 2015" and a finding that the speech-only IEP with occupational therapy services pursuant to a 504 Plan was not a FAPE.  (D.S. Dec. ¶ 3(a)-(b) [Dkt. No. 17-3]).  Plaintiffs were, according to D.S.'s declaration, particularly concerned that occupational therapy services under a 504 Plan would not have stay put rights.  At the time of filing the Second Due Process Petition, Plaintiffs additionally sought to exclude the Independent Evaluation in a motion <u>in limine</u>, however, this motion was denied by the presiding Administrative Law Judge ("ALJ").  (<u>Id.</u> ¶ 7).

After the denial of the motion <u>in limine</u>, the parties appeared for a settlement conference and were able to resolve

the disputes underpinning the matter and reached a second settlement.  (Def.'s 56.1 Statement Ex. E ("2015 Settlement")).  The 2015 Settlement provided the following relief:

1. The parties agree that, effective November 9, 2015, the stay put IEP will no longer be in effect.  Instead, effective November 9, 2015, M.S. shall have a speech-only IEP.

   a. The speech-only IEP shall include services provided by Rizza Miro, two times per week for 30 minutes per session for the remainder of the 2015-2016 school year.  Services shall start the week of November 9, 2015.  The Board shall issue a purchase order immediately, to ensure that services are available beginning the week of November 9, 2015.  If Rizza Miro cannot provide service beginning the week of November 9, 2015, then any missed sessions shall be made up prior to June 20, 2016.  The make-up sessions shall be available in addition to the regularly scheduled sessions.

   b. Both parties waive their right to stay put as to the provider (including Rizza Miro) and frequency of speech services.

   c. Effective November 9, 2015, M.S. will begin receiving speech services within the school district 1 time per week for 25 minutes per session.

   d. At the end of the 2015-2016 school year, the Board shall fund an independent speech and language evaluation by a mutually agreed upon provider, to determine continued services.

2. The parties agree that, effective November 9, 2015, M.S. will receive occupational therapy ("OT") services pursuant to a 504 plan, as follows.

   a. The 504 plan will provide that the Board will pay for Dipa Patel, or, if Dipa Patel is not available, a mutually agreed-upon OT, to travel to M.S.'s school and consult with the school-based therapist and teachers.

   b. These consultations shall occur in November[] 2015 and February 2016, subject to provider availability.  The

> outside OT consultant will spend one hour with school
> staff and/or observing M.S.
>
> c. If either the parent or school district proposes a
> change in OT services, the other party will have all
> procedural rights available with an IEP, including
> "stay put" rights.
>
> d. OT goals and objectives shall be developed in
> consultation with the consulting occupational
> therapist and District staff.
>
> Subject to the last sentence in this paragraph,
> petitioners, on behalf of themselves and M.S., and the
> District, mutually release and forever discharge each
> other, it/their officers, employees, administrators,
> agents and servants from any and all past, present claims
> including but not limited to the allegations in the
> Complaint docketed at OAL Docket No. EDS 11654-2015S.
> <u>Provided, however, that the parties understand that
> neither party has waived their right to "prevailing
> party" attorney's fees.</u>

(Def.'s 56.1 St. Ex. E (emphasis in original)).

On December 8, 2015, ALJ Crowley, after reviewing the settlement agreement, entered an order finding that "[t]he parties have voluntarily agreed to the settlement" and "the [2015 Settlement] fully disposes of all issues in controversy between them and is consistent with the law."  (Am. Compl. Ex. ("ALJ Order") [Dkt. No. 7]).  As such, the ALJ ordered "that the parties comply with the settlement and that these proceedings be concluded."  (<u>Id.</u>)

## II.  <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  14 Fed. R.

7

Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 252.  Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

## III. <u>ANALYSIS</u>

The Court first addresses the parties' cross-motions for summary judgment regarding Plaintiffs' request for attorney fees under IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(I) and other provisions.  (Am. Compl. ¶¶ 66, 67).  The Court then addresses Plaintiffs' motion for summary judgment on Defendant School Board's counterclaim for attorney fees.

A. **Plaintiffs' Claim of Attorney Fees Under IDEA**

Under IDEA's fee-shifting provision, a district court may, at its discretion, award reasonable attorney fees as part of the costs to a "prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I).  A plaintiff "prevails" within the meaning of this provision, "when actual relief on the merits of [the] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 855 (3d Cir.2006), cert. den'd, 549 U.S. 881 (quoting Farrar v. Hobby, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)); see also Moorestown Twp. Bd. of Educ. v. S.D., 811 F. Supp. 2d 1057, 1084–85 (D.N.J. 2011).

In order to be deemed a prevailing party, a plaintiff must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." John T. v. Del. Cnty. Intermediate Unit, 318 F.3d 545, 555 (3d Cir. 2003) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "The 'touchstone' of the inquiry is 'the material alteration of the legal relationship of the parties.'" A.P. v. N. Burlington Cnty. Reg. Bd. of Educ., Civ. A. No. 09-5811, 2010 WL 2817194, at *4 (D.N.J. July 15, 2010) (quoting John T., 318 F.3d at 555). Thus, in adjudicating prevailing party status, courts in this

10

Circuit apply a two-prong test: (1) whether the parents achieved relief on any of their claims, id. at *4 (citing Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 131 (3d Cir. 1991)), and (2) whether there is a causal connection between the litigation and the relief achieved.  Id. (citing Wheeler, 950 F.2d at 132).

Prior to turning to the issue of whether Plaintiffs have met the requirement of either prong of that test, however, the Court must briefly address the threshold issue of whether the 2015 Settlement has "judicial imprimatur."  See John T., 318 F.3d at 560-61 (refusing to grant prevailing party status when the settlement was reached out of court).  In order for a settlement to possess judicial imprimatur: (1) the agreement must contain mandatory language, (2) the agreement must be entitled "Order"; (3) the agreement must bear the judge's signature; and (4) the agreement must be judicially enforceable. Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res., 532 U.S. 598, 601 (2001); see also A.P., 2010 WL 2817194, at *5 (citing Buckhannon, 532 U.S. at 601).  Defendant School Board does not challenge that the ALJ's Order obligating the parties to comply with the settlement provides judicial imprimatur.  The Court, upon review, agrees that the November 2015 contains mandatory language, that the ALJ's Decision Approving Settlement "orders" compliance with it, that it bears the ALJ's signature, and that it is judicially enforceable.

11

(See ALJ Order).  As such, absent any challenge by Defendant School Board, the Court holds that the threshold requirement of judicial imprimatur has been met by the 2015 Settlement.

Instead of challenging that requirement, Defendant School Board argues that Plaintiffs have not met the first prong of the "prevailing party" inquiry — whether the parents achieved any relief on the merits.  (Def.'s Br. at 5 ("[T]he central issue for the Court [to] consider is whether or not Plaintiffs can demonstrate that they were 'prevailing parties' in the second administrative law proceeding; the proceeding which resulted in Plaintiffs agreeing to the very same program and placement the School District had sought for M.S. in the first administrative law proceeding . . . .").  A liberal standard applies to this prong in favor of finding that a plaintiff prevailed.  "As long as the plaintiff achieves some of the benefit sought initially, he can be considered a prevailing party."  Id.; see also D.B. v. Gloucester Twp. Sch. Dist., No. Civ. 08-5667 (NLH), 2013 WL 1314464, at *4 (D.N.J. Mar. 28, 2013) ("A liberal standard applies when assessing the first prong of whether Plaintiffs achieved relief on any of their claims[.]").  Nevertheless, the plaintiff is not entitled to the status if the relief obtained is de minimis or interim in nature.  K.N. v. Passaic Bd. of Educ., Civ. No. 11-399 (JLL), 2011 WL 5157280, at *6 (D.N.J. Oct. 28, 2011); see also John T., 318 F.3d at 558 (holding that

12

non-merits-based preliminary relief cannot be the foundation of attorney fees claim).

Defendant School Board first argues that Plaintiffs achieved no relief beyond interim relief.  In support of this argument, Defendant School Board relies upon John T. v. The Delaware County Intermediate Unity, 318 F.3d 545 (3d Cir. 2003). There, the Third Circuit ruled that a plaintiff was not entitled to prevailing party status after achieving preliminary relief because the District Court did not resolve any merits-based issue in the plaintiff's favor to provide that relief.  Id. at 559.  Defendant School Board also relies upon J.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267 (3d Cir. 2002).  In that case, the Third Circuit held that an order, which was not based upon the merits of the parties' arguments and that was "effective only until appropriate placement could be found for [the student] or until a further Order of an [ALJ], or until the issuance of a final decision in this matter[,]" did not confer prevailing party status.  Id. at 274.  Again, this was because "[a]lthough parents who achieve favorable interim relief may be entitled to prevailing attorney's fees as long as the interim relief granted derived from some determination on the merits, the District Court neither erred nor abused its discretion in denying fees in this case."  Id.

13

The Court disagrees with Defendant School Board that the 2015 Settlement contemplated or provided interim relief.  This agreement did not come about, unlike the relief in John T., as a result of a preliminary injunction motion.  318 F.3d at 558-59.  Moreover, this relief was not intended to serve as a stop-gap measure until other relief could be identified, as in J.O.  287 F.3d at 274.  Instead, the parties' agreement was intended to be the final resolution of the matter between them, with the exception of attorney fees.  (2015 Settlement at 3).  This was a belief shared by the ALJ.  (ALJ Order).  Upon a review of similar cases, the Court holds this is sufficient to render any relief Plaintiffs achieved permanent in nature.  See K.N., 2011 WL 5157280, at *8 ("The Second Consent Order does not constitute 'interim relief' since the language of the order explicitly states that it 'fully disposes of all issues in controversy between [the parties]' and that 'these proceedings be concluded.'").

Nevertheless, the question remains – as Defendant School Board emphasizes repeatedly – whether the 2015 Settlement amounts to relief on Plaintiffs' Second Due Process Petition at all.  Defendant School Board argues that Plaintiffs are not entitled to prevailing party status because the 2015 Settlement was "the very same program and placement the School District had sought for M.S. in the first administrative law proceeding, in

14

exchange for the School District agreeing to <u>temporarily</u> maintain the 'stay put' services and provider Plaintiffs had requested."  (Def.'s Br. at 5 (emphasis added)).

In response, Plaintiffs cite four specific measures by which the Plaintiffs achieved concessions from Defendant School Board in the 2015 Settlement:

- The Board had discontinued private speech services, and ultimately resumed them in connection with the settlement;

- Defendant School Board was required to fund an independent speech and language evaluation by a mutually agreed upon provider, to determine continued services, at the end of the 2015-2016 year;

- Defendant School Board funded consultation with a private occupational therapist in November 2015 and February 2016; and

- D.S. would have stay put rights to occupational therapy, despite the fact that it would be provided under a Section 504 Plan.

(Pls.' Br. at 5-6).

In assessing prevailing party status, this Court is required to make a "commonsense comparison between the relief sought and obtained." <u>K.N.</u>, 2011 WL 5157280, at *5 (citing <u>Wheeler</u>, 950 F.2d at 131).  To make this process straightforward, the relief sought and obtained is summarized in the below table:

| Relief Sought in Due Process Petition[2] | Relief Obtained[3] in 2015 Settlement |
|---|---|
| • A finding that, pending resolution of the dispute, Defendant School Board must provide stay put programming based upon the last agreed-upon IEP;<br><br>• A declaration that Defendant School Board's actions in refusing to implement M.S.'s stay put programming violate IDEA;<br><br>• A finding that the July 2015 offer of a speech-only IEP was not a FAPE; and<br><br>• Attorney-fee reimbursement | • Defendant School Board resumed private speech services;<br><br>• Defendant School Board was required to fund an independent speech and language evaluation by a mutually agreed upon provider, to determine continued services, at the end of the 2015-2016 year;<br><br>• Defendant School Board funded consultation with private occupational therapist in November 2015 and February 2016; and<br><br>• M.S. would have stay put rights to occupational therapy, despite the fact that the therapy would be provided under a 504 Plan. |

The above table evidences that much of the ultimate "relief" that Plaintiffs achieved was unrelated to, or antithetical to, their Second Due Process Petition.  By its text, the Second Due Process Petition was primarily concerned with the de-classification of M.S. and provision of a speech-only IEP (which was the result under the 2015 Settlement).

---

[2] The relief requested as set forth in this table is derived from the relief section of the Second Due Process Petition.
[3] This is the relief upon which Plaintiffs rely for prevailing party status, supra.

(Second Due Process Petition ¶¶ 30, 33, 37).  Indeed, much of
the "relief" achieved resembles the settlement offer Defendant
School Board had been putting forth prior to the commencement of
the Second Due Process Petition. (Def.'s St. & Pls.' Resps. ¶ 5
(Plaintiffs admit Defendant School Board offered a speech-only
IEP and other services requested by Plaintiffs in exchange for
Plaintiffs' consent to declassification)).  The above table also
shows that Plaintiffs achieved no stay put programming based
upon the last agreed-upon IEP, which they sought.  Likewise, no
determination was made that Defendant School Board violated
IDEA, nor was any determination made by the ALJ or the parties
concerning attorney fee reimbursement.

Specifically, Plaintiffs did not succeed in demonstrating
that the speech-only IEP offered by the Defendant School Board
was not a FAPE.  Plaintiffs did, however, secure a specific
provider (Rizza Miro Associates) for speech services.  The
Second Due Process Petition explicitly seeks the resumption and
preservation of services from this provider.  (Second Due
Process Petition ¶¶ 37 ("Thus, even if the July 9, 2015 IEP were
an offer of FAPE (and it is not), the Board would be responsible
for maintenance of services at Rizza Miro.")).[4]  Yet, there is no

---

[4] Defendant School Board concedes the fact that it made the
concession of services provided by Rizza Miro in exchange for
accepting other portions of their settlement offer.  (Def.'s Br.
at 5 (Plaintiffs agreed to "the very same program and placement

evidence that the speech services offered by the School denied a FAPE and Plaintiff, beyond wanting the specific services of Rizza Miro, has produced no such evidence. As such, this did not materially alter the legal relationship of the parties.

Moreover, Plaintiffs were also able to secure "stay put" rights to the occupational therapy services that M.S. would receive under a 504 Plan. This was the case despite the fact that Defendant School Board does not dispute that a 504 Plan does not ordinarily provide stay put rights.[5] It is this relief that was not offered in the settlement, but is a protection than would have otherwise been available to M.S. under the settlement. Thus, the Court finds that this is enough, if barely, to demonstrate some relief for Plaintiffs that materially altered their legal relationship )in a very limited way, however). Plaintiffs could, after the 2015 Settlement,

---

the School District had sought for M.S. in the first administrative law proceeding, in exchange for the School District agreeing to temporarily maintain the 'stay put' services and provider Plaintiffs had requested.")).

[5] D.S.'s Declaration makes the argument that this was central to the purpose of bringing the Second Due Process Petition. (D.S. Dec. ¶ 3). The Court finds this to be a somewhat convenient and post-hoc argument, given it nowhere appears in the Second Due Process Petition. Nevertheless, it appears that the relief obtained was, at least, *generally similar* to the relief sought. P.G. v. Brick Twp. Bd. of Educ., 124 F. Supp. 2d 251, 260 (D.N.J. 2000) ("Plaintiffs will be prevailing parties even though the relief they obtained is not identical to the relief they specifically demanded, as long as the relief obtained is of the same general type.") (quoting Institutionalized Juveniles v. Sec. of Pub. Welfare, 758 F.2d 897, 912 (3d Cir. 1985)).

legally enforce their 504 Plan with stay put rights: for instance, they could enforce the specific time, quantity and nature of services as agreed in the 2015 Settlement.

With regard to the second prong of the inquiry – whether the Second Due Process Petition has a causal relationship with the relief achieved, Defendant School Board does not appear to genuinely contest this.[6]  Indeed, Defendant School Board concedes the 2015 Settlement came about during a hearing before the ALJ on the settlement.  (Def.'s Br. at 6).  The Court does not agree, see supra, that the 2015 Settlement was precisely the "same settlement" that had been offered pre-petition, as it had one narrow modification – it granted 504 stay put protection for the occupational therapy.  As a result of the Second Due Process Petition, Plaintiffs were able to achieve slightly more than Defendant School Board was offering.  Put differently, viewing the parties pre-petition positions on a spectrum, with Defendant School Board on one side offering a speech-only IEP and 504 Plan without stay put rights, and Plaintiffs on the other side seeking re-classification, it seems clear to this Court that the only relief Plaintiffs received as a result of the Second Due Process Petition was a 504 Plan deemed to have stay put rights.[7]

---

[6] The issue of causation is only mentioned in passing by Defendant School Board.  (Def.'s Br. at 7).
[7] Whether this can even be considered merits-based relief, as required under a prevailing party analysis, given that a 504

Defendant School Board has offered no explanation for this shift, and the only clear one appears to be the Second Due Process Petition.

Accordingly, if by a very narrow of margin, Plaintiffs' relief achieved in the 2015 Settlement is sufficient to label them a prevailing party <u>as to a very specific component of the general relief requested in the Second Due Process Petition</u>. Specifically, Plaintiffs prevailed in achieving: the retention of stay put rights for occupational therapy services.  This relief meets the relatively low bar of achieving "some" relief they sought in bringing the Second Due Process Petition.  <u>K.N.</u>, 2011 WL 5157280, at *5 (quoting <u>John T.</u>, 318 F.3d at 555).  It does not, however, warrant an unfettered award of the lodestar requested by Plaintiffs in the Amended Complaint.  It, in fact, warrants a comparatively small award given it represents a sliver of the relief sought.

While this ruling permitting any fee award is perhaps an expansive view of "prevailing party" status, the Court believes the case law dealing with IDEA allows for an expansive reading of "prevailing party."  Specifically, this holding comports with

---

Plan does not give stay-put relief, has not been addressed by the parties.  If the Court has overlooked case law that a prevailing party does not prevail by getting relief to which he is not legally entitled, but which the parties agree to nonetheless agree to provide, the Court will entertain a Rule 7.1 motion for reconsideration.

the parent-friendly provisions of IDEA and the liberal reading
of "prevailing" status that is to be afforded to a plaintiff.
F.B. v. E. Orange Bd. of Educ., No. CIV.08-1206 DRD, 2008 WL
4513874, at *4 (D.N.J. Sept. 30, 2008) ("Under this 'liberal'
standard, a plaintiff may be considered a prevailing party as
long as he or she achieves some of the benefit sought in a
lawsuit, even though the plaintiff does not ultimately succeed
in obtaining a favorable judgment." (internal quotation marks
omitted)); D.S. v. Neptune Twp. Bd. of Educ., 264 F. App'x 186,
189 (3d Cir. 2008) ("The purpose of the fee provision in IDEA is
to enable parents or guardians of disabled children for whom the
statute was enacted to effectuate the rights provided by the
statute.") (citation omitted).  As stated, supra, the relief
sought and the relief obtained need not be identical.  The
relief obtained need only be of the same general type.  P.G.,
124 F. Supp. 2d at 260.

    Moreover, the narrowness of Plaintiffs' relief in achieving
prevailing status is not an inquiry meant for the phase of
determining whether Plaintiffs are entitled to "prevailing
party" status.  Rather, when the relief is not complete or
somewhat marginal (but more than de minimis), the proper course
is an adjustment to the reasonable amount of fees given the
extent of relief.  As has been stated by courts in this
District: "[t]o the extent the degree of relief is relevant, it

21

is relevant only to the amount of the fee award, not to the fee award's availability." J.N. v. Mt. Ephraim Bd. of Educ., No. CIV.A.05-02520, 2007 WL 928478, at *4 (D.N.J. Mar. 26, 2007).

As such, even viewing the facts in the light most favorable to Defendant School Board, the Court GRANTS Plaintiffs' motion for summary judgment insofar as it seeks a determination that Plaintiffs are a "prevailing party" on the issue of the 504 Plan's stay put rights. For that reason, the Court also DENIES Defendant School Board's motion for summary judgment to that extent it seeks outright dismissal of Plaintiffs' operative Complaint, but GRANTS it insofar as Plaintiffs seek to be prevailing parties on any other relief. In the Order that accompanies this Opinion, the Court will instruct the parties to prepare additional briefing on the issue of the proper attorney fee to be awarded to Plaintiffs in light of the very narrow grounds on which they prevailed.[8]

### B. Defendant School Board's Counterclaim for Attorney Fees

Defendant School Board also counterclaims for fees of its own. Plaintiffs purport to seek summary judgment on this claim,

---

[8] The Court anticipates Plaintiffs' fee award would be a small fraction of the amount requested as the limited relief was perhaps obtained with little or no argument from the School Board, and thus, little cost or time expenditure by Plaintiffs. Given the relief obtained was a very small fraction of the relief sought, the parties may wish to discuss a settlement of this matter prior to providing supplemental briefing.

but their arguments actually appear based on facts alleged in the pleadings,[9] not evidence in the record as would be proper for summary judgment. (Pls.' Br. at 9-10 (discussing Defendant School Board's allegations)). As such, the Court treats Plaintiffs' motion as one for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).

Under IDEA, a court in its discretion may award reasonable attorney fees to a school district from a parent "if the parents' complaint or subsequent cause of action was presented for any improper purpose such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(C). Defendant School Board's position, as set forth in in its briefing, is that in failing to accept the recommendations of the Independent Evaluation, which the parties

---

[9] The standard for review of a claim under Rule 12(c) is identical to that under Federal Rule of Civil Procedure 12(b)(6). See Fed. R. Civ. P. 12(h)(2); see also Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). Dismissal of a pleading pursuant to Rule 12(b)(6) is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Hackensack Riverkeeper, Inc. v. Del. Ostego Corp., 450 F.Supp.2d 467, 484 (D.N.J. 2006) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). The allegations contained in the pleading are to be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). A party will also be "given the benefit of every favorable inference that can be drawn from those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). However, the party must make factual allegations and cannot rely on "conclusory recitations of law." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

agreed in the 2014 Settlement would allow them to "hopefully reach agreement concerning M.S.'s eligibility or ineligibility for special education services[,]" the Plaintiffs' Second Due Process Petition was brought for an improper purpose.  Without deciding that such allegations would state a claim, the Court holds that the allegations in the counterclaim fall short of that argument.

Having determined that, at least in a limited regard, the Plaintiffs are prevailing parties and that the 2014 Settlement only "hoped" it would resolve the issues between the parties, the Court first notes that it a dubious proposition that it would award attorney fees to Defendant School Board.  Indeed, the counterclaim as pled by Defendant School Board concedes that Plaintiffs "received relief for issues," albeit ones which were a part of a settlement previously offered.  As discussed, supra, however, the Court disagrees (at least partially) with Defendant School Board's position that the 2015 Settlement was a mirror image of what is alleged to have been offered prior to the Second Due Process Petition.  Defendant School Board's statement that the ALJ upheld the Defendant School Board's position is unsupported at best and a legal conclusion, otherwise.

At base, Defendant School Board's allegations regarding Plaintiffs' improper purpose, only suggesting Plaintiffs lost on all counts before the ALJ and that they ultimately accepted a

24

settlement that had been offered to them previously, are insufficient, particularly where the Court has reviewed record evidence in connection with Plaintiffs' claim for attorney fees and determined that Plaintiffs prevailed on a limited issue. Having done so, the Court dismisses Defendant School Board's claim for attorney fees.

## IV.  <u>CONCLUSION</u>

In conclusion, the Court GRANTS Plaintiffs' motion for summary judgment on their claim for attorney fees, insofar as the Court determines Plaintiffs are the "prevailing party" with regard to stay put protection on the 504 Plan.  The Court RESERVES on the issue of the amount of the attorney fees to be awarded and, as set forth in the accompanying Order, requires additional briefing on the issue of the proper attorney fee to be awarded.  The Court DENIES Defendant School Board's motion for summary judgment on that issue, but GRANTS the motion to the extent Plaintiffs seek to be prevailing parties on any other relief obtained.  The Court additionally GRANTS Plaintiffs' motion for judgment on the pleadings (improperly designated as a motion for summary judgment) on Defendant School Board's counterclaim for its own attorney fees.

DATED: December 21, 2016

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE